**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 1 2022

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

ARKANSAS DEPARTMENT OF ENERGY )
AND ENVIRONMENT, DIVISION OF )
ENVIRONMENTAL QUALITY, )
)
    **Plaintiff,** )
)
    **v.** )
)
U.S. ENVIRONMENTAL PROTECTION )
AGENCY; MICHAEL REGAN, IN HIS )
OFFICIAL CAPACITY AS )
ADMINISTRATOR OF THE UNITED )
STATES ENVIRONMENTAL )
PROTECTION AGENCY, )
)
    **Defendants.** )

Case No. 4:22-cv-359-BSM

This case assigned to District Judge Miller
and to Magistrate Judge Ray

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Arkansas Department of Energy and Environment, Division of Environmental Quality ("DEQ"), by counsel, hereby states the following as its Complaint for Declaratory and Injunctive Relief against the Defendant United States Environmental Protection Agency ("EPA") and Defendant Michael Regan in his official capacity as EPA Administrator:

### INTRODUCTION

1.    Plaintiff DEQ seeks declaratory and injunctive relief against Defendants EPA and Administrator Regan for violating federal law and infringing on DEQ's legal authority to implement the National Pollutant Discharge Elimination System ("NPDES") permit program under Section 402(b) of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1342(b).

2.    As described in more detail herein, Congress authorized States, like Arkansas, to assume responsibility for implementing the NPDES permit program within their borders. Once authorized, the States become the lead regulatory authority for NPDES permitting and EPA

assumes an oversight role to ensure that the State programs comply with the CWA. When a State with an authorized program is preparing to issue an NPDES permit, the CWA requires the State to provide notice to EPA so that the agency can review and comment on the permit prior to issuance. EPA may also object to the permit, and if the State fails to address EPA's concerns, EPA can assume permitting authority for that permit. That power, however, must be exercised by EPA within a prescribed timeframe to preserve the cooperative federalism framework enshrined in the CWA.

3.      This case is about EPA's failure to timely exercise its oversight responsibilities, EPA ignoring those failures, and attempting to insert itself into a completed permitting process for two communities that rely on transparent, fair, and timely administration of federal and state regulatory authority. In doing so, EPA is infringing on the sovereign authority of Arkansas and depriving DEQ of its right to implement its authorized NPDES program.

## PARTIES

4.      Plaintiff DEQ is the Arkansas State agency that is responsible for administering and enforcing the State's environmental protection statutes and regulations, including the NPDES permit program.

5.      Defendant EPA is the federal agency charged with the supervision, administration, and enforcement of many federal environmental laws, pursuant to specific delegations of authority from Congress, including the CWA.

6.      Defendant Michael Regan is the Administrator of EPA and is sued in his official capacity. Administrator Regan has ultimate responsibility for EPA's actions pursuant to the CWA. The Administrator's office is located within EPA's headquarters in Washington, D.C.

## JURISDICTION AND VENUE

7.      This is a case "in law and equity arising under [the] Constitution [and] laws of the United States...." U.S. Constitution Article III, Section 2. This Court has further jurisdiction under 5 U.S.C. §§ 702 and 705-706 and 28 U.S.C. § 1331, 1346, and 1361.

8.      The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. § 702 and 705-706, 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

9.      Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because (1) Plaintiff resides in Arkansas and (2) "a substantial part of the events or omissions giving rise to the claims[s] occurred" in this District.

## LEGAL FRAMEWORK

10.     EPA is charged with administering the federal NPDES permit program pursuant to 33 U.S.C § 1342.

11.     The Governors of each State are authorized to seek authority to administer the NPDES permit program within their borders by applying to EPA and complying with certain statutory conditions. *Id*. § 1342(b). EPA "shall" approve such applications if the minimum statutory requirements are met. *Id*.

12.     Once authorized, the authority to issue NPDES permits transfers exclusively to the State, subject to certain limited oversight responsibilities retained by EPA. *Id*. § 1342(c)(1).

13.     That oversight is exercised, in part, through EPA's review of NPDES permit applications submitted to the State permitting authority and the State providing notice to EPA of "each permit to be issued by such State." *Id*. § 1342(d)(1).

14.    A State permit may not be issued if EPA objects to the issuance of the permit "as being outside the guidelines and requirements of" the CWA; that objection must be conveyed in writing within 90 days of EPA receiving a copy of the proposed permit. *Id.* § 1342(d)(2).

15.    If a State fails to resubmit a permit that meets the stated objection within 90 days of receiving the objection, EPA "may issue the permit...." *Id.* § 1342(d)(4).

16.    The notification requirements of 33 U.S.C. § 1342(d) may be waived by EPA at the time it approves a State NPDES program. *Id.* § 1342(e).

17.    In order to approve a State NPDES program application, EPA requires each State to enter into a memorandum of agreement that will facilitate coordination between EPA and the authorized State permitting authority. 40 C.F.R. § 123.24(a).

18.    That memorandum of agreement must "specify the extent to which EPA will waive its right to review, object to, or comment upon State-issued permits...." 40 C.F.R. § 123.24(d).

19.    The memorandum of agreement may also specify EPA's agreement to review draft permits instead of proposed permits, in which case a State need not submit a proposed permit to EPA for review in accordance with 33 U.S.C. § 1342(d) unless the State issues a permit that differs from the draft permit reviewed by EPA, EPA has objected to the draft permit, or there is significant public comment. 40 C.F.R. § 123.44(j).

20.    A "draft permit" is the document prepared by the NPDES permitting authority indicating the authority's tentative permitting decision, and is the version used to convey that tentative decision to the public during the required public comment period. *See* 40 C.F.R. § 122.2.

21.     A "proposed permit" is the document prepared by the NPDES permitting authority following the close of the public comment period, taking into account information received during that process, and is the version submitted to EPA for review, unless that procedural step is waived, prior to final issuance. *See id.*

22.     "Significant" is not defined in applicable federal law.

23.     EPA authorized DEQ to administer and enforce Arkansas's NPDES permit program on November 1, 1986.

24.     DEQ and EPA entered into the required memorandum of agreement for the NPDES permit program on October 31, 1986 ("NPDES MOA"). That agreement was amended on January 30, 1995.

25.     When approving Arkansas's NPDES permit program, EPA agreed to review draft NPDES permits instead of proposed NPDES permits. NPDES MOA § III.B.7.

26.     EPA also agreed that DEQ could revise draft permits "as it considers appropriate" following the close of the required public comment period, taking into account comments received from the public and EPA on the draft permit. *Id.* § III.B.11.

27.     EPA also agreed that DEQ may issue a final NPDES permit "without further review by EPA" if "(a) the proposed final permit is the same as or more stringent than the draft permit submitted to EPA[,] (b) EPA has not objected to such draft permit, and (c) valid and significant public comments have not been made...." *Id.*

28.     Finally, EPA agreed that if the agency "fails to provide a written objection to a draft permit within the initial time period or fails to provide timely written notice of the specific grounds for objection to a draft permit after making a general objection, EPA shall be deemed to have waived its right to object to permit terms and conditions." *Id.* § III.B.9.

## FACTUAL BACKGROUND

### A.    NPDES Permit for Northwest Arkansas Conservation Authority

29.    On September 1, 2012, DEQ issued NPDES permit number AR0050024 to the Northwest Arkansas Conservation Authority ("NACA") for discharges of treated sanitary wastewater to Osage Creek which flows for approximately 10 miles before its confluence with the Illinois River in Segment 3J of the Arkansas River Basin. The Illinois River flows approximately 14.7 more miles before entering the State of Oklahoma.

30.    That permit authorized a discharge of up to 3.6 million gallons per day ("mgd") and established, among other requirements, a phosphorus limit of 0.1 milligrams/liter ("mg/L").

31.    Given the standard 5-year NPDES permit term, NACA applied for a permit renewal on March 3, 2017, and provided additional information to DEQ on March 22, 2017, August 4, 2020, and September 24, 2020. The permittee requested a modification to the renewal permit to accommodate additional flows due to an expansion from 3.6 mgd to 7.2 mgd. The permittee also requested that its discharge limitation for total phosphorus be modified from 0.1 mg/L to 0.5 mg/L to accommodate the new operational framework for the facility.

32.    Permit No. AR0050024 expired on August 31, 2018. Consistent with standard CWA permitting practice, Permit No. AR0050024 remained effective through administrative continuance pending processing of the permit renewal application.

33.    On December 20, 2020, DEQ issued for public notice and comment a draft amended NPDES permit that would maintain the phosphorus limit of 0.1 mg/L for existing discharges at 3.6 mgd (Tier I limits) and authorize NACA to increase its discharge capacity to 7.2 mgd and establish a phosphorus discharge limitation of 0.5 mg/L (Tier II limits).

34.    Consistent with the NPDES MOA, DEQ provided EPA with a copy of the draft permit on October 28, 2020, more than 45 days prior to the start of the public comment period.

35.    The public comment period closed on January 19, 2021. DEQ received some comments from members of the public and comments from two Oklahoma state agencies. DEQ received EPA's comment letter on November 23, 2020. The Oklahoma state agencies requested additional engagement regarding the draft phosphorus limits, while EPA focused its comments on influent monitoring and recommended including a description of sludge practices in the public notice for the draft permit. EPA did not comment on the draft phosphorus discharge limitation. EPA did not object to the issuance of the permit.

36.    Pursuant to 33 U.S.C. § 1342(d)(2), 40 C.F.R. § 123.44(a), and NPDES MOA § III.B.11, EPA had until January 26, 2021, to object to the issuance of the draft permit.

37.    On February 11, 2021, after its permit review period closed and after the public comment period closed, EPA submitted to DEQ a letter identifying the comments submitted by the Oklahoma state agencies concerning the phosphorus limit and requesting additional information.

38.    On September 17, 2021, DEQ provided EPA revised permit language that would require the permittee to certify, before the Tier II limits would go into effect, that any increase in phosphorus discharges due to the 0.5 mg/L discharge limit would be completely offset by phosphorus reductions due to new customer connections to the NACA treatment plant.

39.    On September 28, 2021, 245 days after EPA's deadline for objecting to the draft NACA permit had passed, EPA issued to DEQ an interim objection letter and requested additional information on the Tier II phosphorus limit in the draft permit.

40.     Following additional dialogue with NACA, the Oklahoma state agencies, and EPA, and after considering and responding to all timely submitted comments, DEQ finalized and issued Permit No. AR0050024 to NACA on December 1, 2021. The final permit was functionally equivalent to the draft permit but established a more stringent Tier II phosphorus limit of 0.35 mg/L and included the requirement that any increases in phosphorus discharges due to the changed limit be completely offset before the Tier II limits become effective. DEQ did not consider the comments submitted during the comment period to be significant.

41.     No judicial review petitions have been filed challenging the final NACA NPDES permit. The time for administrative review of the permit is exhausted.[1]

42.     On December 30, 2021, 338 days after EPA's deadline for objecting to the draft NACA permit had passed, EPA issued a general objection letter for the NACA permit. In this letter, EPA characterizes the final NACA permit as "proposed" because the permit is "materially different" than the draft EPA previously reviewed and because DEQ did not send to EPA the public comments from Oklahoma agencies that EPA asserted are "significant."

43.     On January 21, 2022, 360 days after EPA's deadline for objecting to the draft NACA permit had passed, EPA issued a specific objection letter for the NACA permit. EPA again characterized the final permit as "proposed" for purposes of EPA's oversight responsibilities under the CWA, reiterated its concerns regarding the Tier II phosphorus discharge limit that had already been established in the final NACA NPDES permit, and demanded that DEQ revise the permit with a 0.1 mg/L Tier II discharge limitation or EPA would assume permitting authority.

---

[1] A request for administrative review before the Arkansas Pollution Control and Ecology Commission (APC&EC), Docket 22-001-P, was dismissed for lack of standing under Arkansas law, APC&EC Minute Order 22-05, dated February 25, 2022.

44.     On April 1, 2022, EPA sent another letter to DEQ further addressing the NACA permit and the Springdale Water and Sewer Commission, Springdale Water Treatment Facilities ("Springdale") permit and asserting that DEQ must revise both permits with a 0.1 mg/L discharge limitation or EPA would assume permitting authority for both facilities.

**B.      NPDES Permit for Springdale Water and Sewer Commission**

45.     On April 1, 2004, DEQ issued NPDES permit number AR0022063 to Springdale for discharges of treated sanitary wastewater to Spring Creek which flows to Osage Creek and then flows to the Illinois River in Segment 3J of the Arkansas River Basin. The Springdale discharge is located 29 miles upstream of the State of Oklahoma. That permit authorized a discharge of up to 24 mgd and established, among other requirements, a phosphorus limit of 1.0 mg/L.

46.     Given the standard 5-year NPDES permit term, Springdale applied for a permit renewal on September 22, 2008. The renewal process for this permit was put on hold while the regulatory agencies of Arkansas and Oklahoma negotiated a path forward to reduce phosphorus discharges in the Illinois River Watershed. After the two states entered into the 2018 Memorandum of Agreement by and between Oklahoma and Arkansas, DEQ requested an updated renewal application. Springdale submitted updated information on April 30, 2020.

47.     Permit No. AR0022063 expired on March 31, 2009. Consistent with standard CWA permitting practice, Permit No. AR0022063 remained effective through administrative continuance pending processing of the permit renewal application.

48.     On February 14, 2021, DEQ issued for public notice and comment a draft NPDES permit that included a phosphorus discharge limit of 1.0 mg/L.

9

49.     Consistent with the NPDES MOA, DEQ provided EPA with a copy of the draft permit on December 14, 2020, more than 45 days prior to the start of the public comment period.

50.     The public comment period closed on March 16, 2021. DEQ received some comments from members of the public and from one Oklahoma state agency. DEQ received EPA's comment letter on January 13, 2021. DEQ received some comments from members of the public and from two Oklahoma state agencies. The Oklahoma state agencies commented on several provisions of the draft, including the phosphorus limit. EPA, just as it did for the NACA permit, focused its comments on influent monitoring and recommended including a description of sludge practices in the public notice for the draft permit. EPA did not comment on the draft phosphorus discharge limitation. EPA did not object to the issuance of the permit.

51.     Pursuant to 33 U.S.C. § 1342(d)(2), 40 C.F.R. § 123.44(a), and NPDES MOA § III.B.11, EPA had until March 14, 2021, to object to the issuance of the draft permit.

52.     After considering and responding to all timely submitted comments, DEQ finalized and reissued Permit No. AR0022063 to Springdale on December 1, 2021. The final permit was identical to the draft permit that EPA previously reviewed. DEQ did not consider the comments submitted during the comment period to be significant.

53.     No judicial review petitions have been filed challenging the final Springdale NPDES permit. The time for administrative review of the permit is exhausted.[2]

54.     On December 30, 2021, 291 days after EPA's deadline for objecting to the draft Springdale permit had passed, EPA issued a general objection letter for the Springdale permit. In that letter, EPA expressed in writing for the first time its concerns related to the phosphorus

---

[2] A request for administrative review before the Arkansas Pollution Control and Ecology Commission (APC&EC), Docket 22-002-P, was dismissed because it was not timely filed under Arkansas law, APC&EC Minute Order 22-06, dated February 25, 2022.

discharge limit that had already been established in the final NPDES permit for the Springdale facility.

55.     On January 21, 2022, 313 days after EPA's deadline for objecting to the draft Springdale permit had passed, EPA issued a specific objection letter for the Springdale permit. EPA characterized the final permit as "proposed" for purposes of EPA's oversight responsibilities under the CWA, reiterated its concerns regarding the phosphorus discharge limit that had already been established in the final Springdale NPDES permit, and demanded that DEQ revise the permit with a 0.1 mg/L discharge limitation or EPA would assume permitting authority.

56.     On April 1, 2022, EPA sent another letter to DEQ further addressing both the NACA and Springdale permits and reiterating that DEQ must revise both permits with a 0.1 mg/L discharge limitation or EPA would assume permitting authority for both facilities.

## CLAIMS FOR RELIEF

### Count I

### EPA's Objection to the NACA Permit is Untimely, Exceeds Statutory Authority, and is Without Observation of Procedure Required by Law

57.     The allegations in paragraphs 1 through 56 are hereby re-alleged and incorporated as though fully set forth herein.

58.     Pursuant to Section 33 U.S.C. § 1342(d)(2), 40 C.F.R. 123.44(a) and (b), and NPDES MOA § III.B.7, EPA has 90 days to review draft permits developed by DEQ for issuance. If EPA does not object to a draft permit within that time period, DEQ is authorized to issue those permits as "EPA shall be deemed to have waived its rights to object to permit terms and conditions." NPDES MOA § III.B.7.

59.     On October 28, 2020, DEQ provided EPA a draft permit for the NACA facility for review. On November 23, 2020, EPA issued a comment letter on the proposed permit but did not comment on the draft phosphorus effluent limit. EPA did not issue a general or specific objection to the draft NACA permit.

60.     On January 26, 2020, EPA's review period for the draft NACA permit closed.

61.     After EPA's review period closes, DEQ may lawfully issue a permit without further EPA review if: (a) the proposed final permit is the same as or more stringent than the draft permit that EPA previously reviewed; (b) EPA has not previously objected to the draft permit, and (c) significant public comments have not been made. 40 C.F.R. § 123.44(j); NPDES MOA § III.B.11.

62.     On September 28, 2021, 245 days after EPA's deadline for objecting to the draft NACA permit had passed, EPA issued to DEQ an interim objection letter and requested additional information on the Tier II phosphorus limit in the draft permit.

63.     On December 1, 2021, DEQ issued a final NPDES permit to NACA. The final permit includes a phosphorus limit that is more stringent than the draft permit that EPA previously reviewed; EPA had waived its right to object to the draft permit upon expiration of its review period; and significant public comments had not been made. The final permit for NACA was therefore lawfully issued in accordance with the CWA, EPA regulations, and the NPDES MOA.

64.     On December 30, 2021, 338 days after EPA's comment period on the NACA permit had closed, EPA issued a general objection letter for the NACA permit.

65.     On January 21, 2022, 360 days after EPA's comment period on the NACA permit had closed, EPA issued a specific objection letter for the NACA permit.

66.     EPA's interim objection, general objection, and specific objection letters for the NACA permit were not timely issued and therefore exceed EPA's statutory authority, were issued without observation of procedure required by law, and are *ultra vires*.

67.     EPA's untimely interim, general, and specific objection letters for the NACA permit unlawfully threaten to impose certain requirements on DEQ and assume authority over the duly issued permit.

68.     EPA's objection letters assert that the final permits that DEQ issued on December 1, 2021, are not in fact *issued* permits, but that EPA considers them to be *proposed* permits. It is on this basis that EPA claims authority to comment and object to those prior issued permits.

69.     EPA's objection letters assert that, if DEQ does not modify the NACA permit as EPA's letters demand, EPA will assume permitting responsibility for the permit, rendering the duly issued permit invalid and effectively displacing DEQ as the permitting authority.

70.     Any action EPA takes pursuant to those objection letters, including attempting to assume permitting authority over the NACA permit, is unlawful and would be *ultra vires*.

71.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to make binding adjudications of right and declare the rights of the parties in regard to EPA's untimely objection letters and unlawful assertions of authority over the NACA permit.

72.     This Court also has the power to enjoin EPA from assuming authority over the NACA permit and maintain the *status quo ante*.

73.     This Court also has authority to declare and set aside EPA's objection letters as unlawful pursuant to the Administrative Procedure Act, U.S.C. §§ 702, 704, and 706. EPA's determination that the NACA permit is "proposed" instead of final is a final agency determination that immediately harms the legal rights and responsibilities of DEQ and the

regulated entities that rely on its continued and proper administration of the NPDES permit program within Arkansas.

## Count II

### EPA's Objection to the NACA Permit is Arbitrary and Capricious, An Abuse of Discretion, and is Otherwise Not in Accordance with Law

74.     The allegations in paragraphs 1 through 73 are hereby re-alleged and incorporated as though fully set forth herein.

75.     EPA's claim that the final NACA permit issued by DEQ on December 1, 2021, is a "proposed permit" is arbitrary and capricious, an abuse of discretion, and is otherwise not in accordance with law.

76.     EPA's claim that the final permit is materially different and less protective than the draft permit is arbitrary and capricious as the final Tier II discharge limit is 0.35 mg/L *less* than the draft permit that EPA reviewed, and the final permit includes the requirement that any increases in phosphorus discharges due to the changed limit be completely offset before the Tier II limits become effective. EPA's claim is also based on an unlawfully promulgated effluent limitation.[3]

77.     EPA's claim that DEQ received "significant" public comment relies on an EPA interpretation of a term that is not defined in federal law, overrides DEQ's determination of significance as the lead permitting authority, and involves an issue that EPA declined to comment on during its congressionally established statutory review period but is now apparently so important that EPA is willing to trample on DEQ's rights to wrestle permitting authority from the State.

---

[3] DEQ is separately challenging EPA's unlawful promulgation of this effluent discharge limitation in the Eighth Circuit Court of Appeals pursuant to 33 U.S.C. § 1369(b)(1).

78.     EPA's reinterpretation of the issue following the close of its statutory review period is arbitrary and capricious and an abuse of discretion, and fundamentally alters the regulatory scheme developed by Congress while infringing on Arkansas's authority to run its State NPDES program as Congress intended.

79.     This Court has authority to declare and set aside EPA's objection letters as unlawful pursuant to 5 U.S.C. §§ 702, 704, and 706. EPA's determination that the NACA permit is "proposed" instead of final is a final agency determination that immediately harms the legal rights and responsibilities of DEQ and the regulated entities that rely on its continued and proper administration of the NPDES permit program within Arkansas.

### Count III

**EPA's Objection to the Springdale Permit is Untimely, Exceeds Statutory Authority, and is Without Observation of Procedure Required by Law**

80.     The allegations in paragraphs 1 through 79 are hereby re-alleged and incorporated as though fully set forth herein.

81.     On December 14, 2020, DEQ provided EPA a draft permit for the Springdale facility for review that included a draft phosphorus effluent limit of 1.0 mg/L.

82.     On January 13, 2021, EPA issued a comment letter on the draft permit but did not comment on the draft phosphorus effluent limit. EPA did not issue a general or specific objection to the draft Springdale permit.

83.     On March 14, 2021, EPA's review period for the draft Springdale permit closed pursuant to 33 U.S.C. § 1342(d)(2), 40 C.F.R. 123.44(b), and NPDES MOA § III.B.7. EPA did not issue a general or specific objection to the draft Springdale permit within that time period.

84.     After EPA's review period closes, DEQ may lawfully issue a permit without further EPA review if: (a) the proposed final permit is the same as or more stringent than the

draft permit that EPA previously reviewed; (b) EPA has not previously objected to the draft permit, and (c) significant public comments have not been made. 40 C.F.R. § 123.44(j); NPDES MOA § III.B.11.

85.     On December 1, 2021, DEQ reissued a final NPDES permit to Springdale. The final permit, including the phosphorus limit, was identical to the draft permit that EPA previously reviewed; EPA had not previously objected to the draft permit; and significant public comments had not been made. The final permit for Springdale was therefore lawfully issued in accordance with the CWA, EPA regulations, and the NPDES MOA.

86.     On December 30, 2021, 291 days after EPA's comment period on the Springdale permit had closed, EPA issued a general objection letter for the Springdale permit.

87.     On January 21, 2022, 313 days after EPA's comment period on the Springdale permit had closed, EPA issued a specific objection letter for the Springdale permit.

88.     EPA's general objection and specific objection letters for the Springdale permit were not timely issued and therefore exceed EPA's statutory authority, were issued without observation of procedure required by law, and are *ultra vires*.

89.     EPA's untimely general and specific objection letters for the Springdale permit unlawfully threaten to impose certain requirements on DEQ and assume authority over the duly issued permit.

90.     EPA's objection letters assert that the final permits that DEQ issued on December 1, 2021, are not in fact *issued* permits, but that EPA considers them to be *proposed* permits. It is on this basis that EPA claims authority to comment and object to those prior issued permits.

91.     EPA's objection letters assert that, if DEQ does not modify the Springdale permit as EPA's letters demand, EPA will assume permitting responsibility for the permit, rendering the duly issued permit invalid and effectively displacing DEQ as the permitting authority.

92.     Any action EPA takes pursuant to those objection letters, including attempting to assume permitting authority over the Springdale permit, is unlawful and would be *ultra vires*.

93.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to make binding adjudications of right and declare the rights of the parties in regard to EPA's untimely objection letters and unlawful assertions of authority over the Springdale permit.

94.     This Court also has the power to enjoin EPA from assuming authority over the Springdale permit and maintain the status quo ante.

95.     This Court also has authority to declare and set aside EPA's objection letters as unlawful pursuant to 5 U.S.C. §§ 702, 704, and 706. EPA's determination that the Springdale permit is "proposed" instead of final is a final agency determination that immediately harms the legal rights and responsibilities of DEQ and the regulated entities that rely on its continued and proper administration of the NPDES permit program within Arkansas.

<u>**Count IV**</u>

**EPA's Objection to the Springdale Permit is Arbitrary and Capricious, An Abuse of Discretion, and is Otherwise Not in Accordance with Law**

96.     The allegations in paragraphs 1 through 95 are hereby re-alleged and incorporated as though fully set forth herein.

97.     EPA's claim that the final Springdale permit issued by DEQ on December 1, 2021, is a "proposed permit" is arbitrary and capricious, an abuse of discretion, and is otherwise not in accordance with law.

98.     EPA's claim that the final permit is different than the draft permit is arbitrary and capricious as the final permit is identical to the draft permit that EPA reviewed. EPA's claim is also based on an unlawfully promulgated effluent limitation.[4]

99.     EPA's claim that DEQ received "significant" public comment relies on an EPA interpretation of a term that is not defined in federal law, overrides DEQ's determination of significance as the lead permitting authority, and involves an issue that EPA declined to comment on during its congressionally established statutory review period but is now apparently so important that EPA is willing to trample on DEQ's rights to wrestle permitting authority from the State.

100.    EPA's reinterpretation of the issue following the close of its statutory review period is arbitrary and capricious and an abuse of discretion, and fundamentally alters the regulatory scheme developed by Congress while infringing on Arkansas's authority to run its State NPDES program as Congress intended.

101.    This Court has authority to declare and set aside EPA's objection letters as unlawful pursuant to 5 U.S.C. §§ 702, 704, and 706. EPA's determination that the Springdale permit is "proposed" instead of final is a final agency determination that immediately harms the legal rights and responsibilities of DEQ and the regulated entities that rely on its continued and proper administration of the NPDES permit program within Arkansas.

### PRAYER FOR RELIEF

In light of the foregoing, DEQ respectfully asks that this Court:

1.      Issue a declaratory judgment that the permits DEQ issued to NACA and Springdale are valid; EPA's September 28, 2021, December 30, 2021, January 21, 2022, and

---

[4] DEQ is separately challenging EPA's unlawful promulgation of this effluent discharge limitation in the Eighth Circuit Court of Appeals pursuant to 33 U.S.C. § 1369(b)(1).

April 1, 2022 letters purporting to object to the NACA permit are untimely and any action taken pursuant to those untimely letters is unlawful; and that EPA's December 30, 2021, February 10, 2022, and April 1, 2022 letters purporting to object to the Springdale permit are untimely and any action taken pursuant to those untimely letters is unlawful.

2.      Issue preliminary and permanent injunctions ordering Defendants to immediately withdraw their September 28, 2021, December 30, 2021, January 21, 2022, and April 1, 2022 letters purporting to object to the NACA permit; and immediately withdraw their December 30, 2021, February 10, 2022, and April 1, 2022 letters purporting to object to the Springdale permit.

3.      Award any such additional relief available under the law that may be appropriate under the circumstances and as the Court deems just and proper.

Respectfully submitted this 21st day of April 2022.

Respectfully Submitted,

DAVID P. ROSS (*pro hac vice* pending)
ANNA J. WILDEMAN (*pro hac vice* pending)
TROUTMAN PEPPER HAMILTON SANDERS LLP
401 9th Street, NW
Washington, DC 20004
(202) 274-2895
Dave.Ross@troutman.com
Anna.Wildeman@troutman.com

T. SCOTT MILLS (*pro hac vice* pending)
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
(404) 885-3000
Scott.Mills@troutman.com

BASIL V. HICKS III (AR Bar No. 2015117)
Office of Chief Counsel
Arkansas Dept. of Energy and Environment,
Division of Environmental Quality

19

5301 Northshore Drive
North Little Rock, AR 72118
501-682-0884
hicks@adeq.state.ar.us

*Attorneys for Plaintiff Arkansas Department of Energy and Environment, Division of Environmental Quality*